[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-13189

Non-Argument Calendar

————————————

THURMAN GOODMAN, JR.,

Plaintiff-Appellant,

*versus*

FLORIDA POP, LLC,
d.b.a. Popeyes Louisiana Kitchen,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-00340-MSS-AAS

_____

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Thurman Goodman, Jr., appeals the district court's entry of summary judgment for his former employer, Florida Pop, LLC, d/b/a Popeyes Louisiana Kitchen ("Florida Pop"), in a Florida workers' compensation retaliation action brought under Fla. Stat. § 440.205. Because we agree with Goodman that the district court improperly granted summary judgment on grounds not raised by the parties without affording notice and an opportunity to respond, we vacate and remand for further proceedings.

## I.

In the light most favorable to Goodman, these are the relevant facts. From November 2015 to July 2016, Goodman worked as a cook at a Popeyes restaurant owned and operated by Florida Pop in Riverview, Florida. In March 2016, Goodman reported another cook, Jason Lismore, for drinking on the job. On the night of March 31, 2016, Goodman left the Popeyes and walked to a 7-Eleven across the street. Lismore then entered the 7-Eleven and asked why he had "snitch[ed] on him to corporate."

Lismore, Travis Green, and two other persons began assaulting Goodman, who lost consciousness during the attack. Although Goodman recognized Lismore, he did not realize that

Green, a shift supervisor at Popeyes, had assaulted him until over a year later, when he viewed the 7-Eleven surveillance footage.

The day after the attack, Goodman called the Popeyes employee hotline to report that Lismore "beat him up because he reported [Lismore] several time[s] for drinking while working." Goodman also claimed that he had "obtained [an] attorney." Popeyes suspended Lismore the same day Goodman reported the attack. Lismore was fired five days later. Goodman never informed Popeyes that Green had attacked him, and there is no evidence that Popeyes learned of Green's role during Goodman's tenure. Goodman continued to work alongside Green at the Popeyes after the 7-Eleven attack and had no problems with him.

At some point in April 2016, Goodman spoke with the store manager, Bernard Robinson, about seeking workers' compensation for the injuries he had sustained during the 7-Eleven attack. Robinson told Goodman that Florida Pop "wasn't going to do anything, so [he] might as well retain an attorney." Goodman retained at attorney to help him obtain workers' compensation at some point after he left his job at Popeyes in July 2016. Robinson was the only Popeyes employee at the Riverview location with whom Goodman discussed filing a claim for workers' compensation.

On April 6, 2016, Goodman called the employee hotline again. He reported that Lismore had returned to the Popeyes to pick up a "family box" of fried chicken from shift supervisor Liz Smith, who was Lismore's girlfriend at the time. Goodman told

the hotline that he did "not feel safe returning to work." Robinson testified that he remembered "a couple incidents" where Lismore returned to the Popeyes following the attack at the 7-Eleven.

Goodman called the employee hotline a third time on April 25, 2016. This time, he claimed that Lismore had returned to the Popeyes and "pulled a gun" on shift supervisor Kayla Maldonado. Goodman also reported that "he feared for his family and [his own] safety," and that he "did not feel comfortable about his return because he felt that [Lismore] may return to harm him." The write-up of this call was forwarded to Alan Levine, the district manager responsible for the Popeyes where Goodman worked, who claimed that Goodman was a "[f]ormer employee making up lies."

Goodman ultimately decided to quit working at Popeyes in July 2016 because of a phone call he received from Green. During the call, Green told Goodman that Lismore, along with a man named "T-Pain," "was at [the] Popeyes with a gun" looking for him.

## II.

Goodman sued Florida Pop in February 2020 alleging, as relevant here, a claim of workers' compensation retaliation under Florida law. According to the operative second amended complaint, Florida Pop intimidated, coerced, and constructively discharged him by permitting its employees, Lismore and Green, to violently attack him outside of their workplace on March 31, 2016. Florida Pop "then acted recklessly and maliciously by exposing

Goodman to Lismore and Green after it knew, at minimum, that Lismore had significantly harmed" him, and it exhibited "callous behavior toward [him] after the attack." Goodman "believed that Lismore's continued employment was an effort by [Florida Pop] to intimidate him, coerce him, and otherwise frighten him" against pursuing worker's compensation and to constructively discharge him.

After discovery, Florida Pop moved for summary judgment and submitted supporting evidence. Florida Pop argued that Goodman could not establish a workers' compensation retaliation claim for two reasons: (1) no adverse employment action dissuaded him from making or supporting a claim arising from the March 31 attack; and (2) no causal connection existed between the protected conduct and the alleged retaliatory conduct, including "the continued employment of Mr. Green," "Defendant's failure to stop Mr. Lismore from coming to the store," and "Mr. Lismore's presence at the store with a gun."

Goodman responded that genuine issues of material fact remained as to both elements of his claim. He contended that Florida Pop's "failure to stop Lismore from coming to the Popeye's, combined with shift-supervisor Green's scaring Goodman with the idea of Lismore coming to the store with a gun, was nothing short of intimidation" and caused his constructive discharge. He further argued that a causal connection, for purposes of a *prima facie* case, was evidenced by Florida Pop's "callous disregard" for his safety after the attack, including failing to stop Lismore from coming to

the restaurant, and the temporal proximity between his final report to the employee hotline on April 25, 2016, and his final day of employment on July 13, 2016.

Florida Pop replied in part that Goodman asserted a new claim of constructive discharge based on Green's phone call to him about Lismore.  Florida Pop pointed out that, in the operative complaint, Goodman's theory of constructive discharge was based on "Lismore's continued employment," and that Goodman's alleged constructive discharge was several months after Lismore's termination.

The district court granted summary judgment to Florida Pop.  In starting its analysis, the court noted that Goodman "advance[d] two principal theories of retaliation" in response to the motion for summary judgment: (1) Popeyes failed to prevent Lismore from visiting the Riverview Popeyes after his termination; and (2) Green intimated and retaliated against him by informing him that Lismore was armed and looking for him at the Popeyes. While the defendants had argued that the first theory failed on the merits and the second theory was not properly raised, the court seemingly took the reverse course.

The district court declined to consider the first theory because, in the court's view, it was not raised in the second amended complaint.  The court noted that the operative complaint had alleged retaliation based on "continued employment."  It did not, according to the court, "advance the theory . . . that Popeyes retaliated against [Goodman] by failing to ensure that Lismore did not

return to the Popeyes after Lismore was fired." The court noted "as an aside, that Goodman also fails to offer any evidence that Lismore was an agent of Popeyes such that his continued appearances at the store could be imputed to Popeyes." So "the claim would fail if it had been properly preserved."

As to the second theory, the district court concluded that "Goodman's attempt to premise his retaliation claim on Green's phone call fails because there is no evidence that Green ever learned of Goodman's efforts to seek workers' compensation." Without evidence that Green was aware of the protected conduct, the court stated, "no reasonable jury could find that Green retaliated against Goodman because of Goodman's attempts to seek workers' compensation."

## III.

We review *de novo* a district court's grant of summary judgment, "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (quotation marks omitted). Summary judgment is appropriate when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "But it is improper if a reasonable jury could find for the non-moving party." *Amy*, 961 F.3d at 1308.

Districts courts may grant summary judgment on grounds not raised by a party only "[a]fter giving notice and a reasonable

time to respond." Fed. R. Civ. P. 56(f)(2); *Amy*, 961 F.3d at 1310. Thus, a court errs by granting summary judgment on unraised grounds where the nonmovant lacks adequate notice and an opportunity to address the issue. *See Amy*, 961 F.3d at 1310–11 (vacating the grant of summary judgment due to lack of notice and opportunity to respond).

Here, the district court granted summary judgment to Florida Pop based on grounds not raised by the parties, without providing notice and an opportunity to respond, so we vacate and remand for further proceedings. We therefore need not consider Goodman's other arguments, including that the court improperly shifted the burden at summary judgment.

In granting summary judgment, the district court first ruled that Goodman waived his theory about Florida Pop's failure to protect him from Lismore after Lismore's termination. But Florida Pop's motion for summary judgment never asserted that Goodman's testimony about Lismore's post-termination conduct was outside the scope of the second amended complaint. Rather, the motion treated that testimony as part of the merits to be resolved, arguing that no causal connection was established between the protected conduct and both "Defendant's failure to stop Mr. Lismore from coming to the store" and "Mr. Lismore's presence at the store with a gun." In addition, we note that the operative complaint's theory of retaliation included not just Lismore's "continued employment," but also that Florida Pop allegedly "expos[ed] Goodman to Lismore and Green after it knew, at minimum, that

Lismore had significantly harmed" him and that Popeyes exhibited "callous behavior toward [him] after the attack."

While Florida Pop's reply brief at summary judgment accused Goodman of offering a "new theory of constructive discharge" not raised in the complaint, that assertion was directed at Goodman's argument "that Mr. Green's alleged phone call to Plaintiff informing him that Mr. Lismore was allegedly at the store with a gun is now the cause of his constructive discharge." In contrast to the other theories of retaliation, including the failure to stop Lismore from coming to the Riverview Popeyes, Florida Pop had not addressed that particular theory in its motion for summary judgment.

Even so, the district court determined, as a second ground for granting summary judgment, that any theory of retaliation based on Green's phone call failed because there was no evidence Green knew of Goodman's efforts to seek workers' compensation. Again, though, Florida Pop did not raise that ground at summary judgment, nor does it defend the court's analysis on appeal. Florida Pop also makes no more than a bare assertion that its "Motions and subsequent Answers and Affirmative Defenses, which referenced the omissions in Goodman's complaint," afforded proper notice of that ground. It cites nothing in the record to show, and we do not see any clear sign, that Goodman had adequate notice of and an opportunity to address the ground on which the court based its judgment. *See Amy*, 961 F.3d at 1310–11.

For these reasons, we conclude that the district court erred in granting summary judgment on grounds not raised by the parties.[1]  We vacate the court's order granting summary judgment and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[1] We decline to affirm on the alternative ground offered by the district court with respect to Goodman's theory of retaliation based on Florida Pop's failure to protect from Lismore, because that theory does not appear to require Lismore to be Florida Pop's agent.  We also decline to address Florida Pop's alternative arguments for affirmance on appeal.  *See Waldron v. Spicher*, 954 F.3d 1297, 1303 (11th Cir. 2020) ("prefer[ring] that the district court address [an issue] in the first instance" at summary judgment).